ACCEPTED
13-14-00511-cv
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
2/3/2015 11:05:49 AM
DORIAN RAMIREZ
CLERK

## No. 13-14-00511-CV

*In the Court of Appeals*
*For the Thirteenth Judicial District*
*Corpus Christi-Edinburg, Texas*

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
2/3/2015 11:05:49 AM
DORIAN E. RAMIREZ
Clerk

TESORO CORPORATION
Appellant

V.

TESORO CORPORATION D/B/A TESORO PETROLEUM CORP.
Appellee

On Appeal from the 206TH District Court, Hidalgo County, Texas, Trial Court Cause No. C-2971-09-D

## APPELLANT'S BRIEF

Mark A. Weitz
Weitz Morgan PLLC
100 Congress Avenue
Suite 2000
Austin, Texas 78701
512-394-8950
512-657-1849 (mobile)
512-852-4446 (facsimile)

Reynaldo Ortiz
Law Office of Rey Ortiz
1305 E. Nolana,
Suite F
McAllen, Texas 78504
956-687-4567
956-631-1384 (facsimile)

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

Appellant certifies that the following is a complete list of the parties, attorneys, and other persons who have an interest, financial or otherwise, in the outcome of this proceeding:

Appellant:

TESORO CORPORATION

Appellant's: Counsel:

Mark A. Weitz
Weitz Morgan PLLC
100 Congress Avenue
Suite 2000
Austin, Texas 78701
512-394-8950
512-657-1849 (mobile)
512-852-4446 (facsimile)

Reynaldo Ortiz
Law Office of Rey Ortiz
1305 E. Nolana,
Suite F
McAllen, Texas 78504
956-687-4567
956-631-1384 (facsimile)

Appellee:

TESORO CORPORATION D/B/A TESORO PETROLEUM CORPORATION

Appellee's Counsel:

Frank Weathered
Dunn, Weathered, Coffey,
Rivera & Kasperitis, P.C.
611 S. Upper Broadway
Corpus Christi, Texas 78401
361-883-1594
361-883-1599 (facsimile)

Sarah Pierce Cowen
Cowen & Garza, L.L.P.
820 Hackberry Avenue,
Suite 101
McAllen, Texas 78501
956-994-9170

Gerald T. Drought, Esq.
Martin & Drought, P.C.
Bank of America Plaza,
25th Floor
300 Convent Street
San Antonio, Texas 78205
210-227-7591
210-227-7924 (facsimile)

Gilbert Hinojosa
Gilbert Hinojosa &
Associates, PC
622 East St. Charles St.
Brownsville, Texas 78520
956-544-4218
956-544-4218  (facsimile)

**TABLE OF CONTENTS**

|  | **Page** |
|---|---|
| Table of Contents | i |
| Table of Authorities | v |
| Statement of the Case | 1 |
| Statement Regarding Oral Argument | 3 |
| Issues Presented: | 4 |

Issue #1: Did the District Court err in Granting the Appellee's Motion to Set Aside the Jury Verdict based upon failure to Establish Irreparable harm and Lack of Adequate Remedy at Law?

Issue #2: Did the District Court err in Granting the Appellee's Motion to Set Aside the Jury Verdict based on Improper Jury Instructions.

Issue #3: Even if the Court Rejected the Appellee's Motion to Set Aside Jury Verdict Did the District Court err in Denying Appellant's Request for Permanent Injunction after the Full Hearing.

Issue#4: Did the District Court err in denying Appellant's Injunctive Relief based on Balancing the Equities and/or Unclean Hands.

Issue #5: Did the District Court err in vacating the Jury's Attorney Fee award.

**Page**

Statement of Facts                                          5

Summary of Argument                                        10

Argument                                                   10

    Issue #1: Did the District Court err
    in Granting the Appellee's Motion to
    Set Aside the Jury Verdict based upon
    failure to Establish Irreparable harm
    and Lack of Adequate Remedy at Law?          11

        A.   The Issue of Irreparable Harm is
            for the Court:                   11

        B.   There Was Irreparable Harm:      15

        C.   There is no Adequate Remedy at Law:   17

    Issue #2: Did the District Court err
    in Granting the Appellee's Motion to
    Set Aside the Jury Verdict based on
    Improper Jury Instructions.                  19

    Issue #3: Even if the Court Rejected the
    Appellee's Motion to Set Aside Jury Verdict
    Did the District Court err in Denying
    Appellant's Request for Permanent Injunction
    after the Full Hearing.                      28

        A.   Standard of Review:              29

        B.   Imminent Harm:                   29

        C.   Irreparable Injury and Adequate
            Remedy at Law:                   32

1. Irreparable Injury:    33

2. Adequate Remedy at Law:    34

D. The Record Shows a Complete Absence of any Guiding Principles or Rules Upon Which the Court Relied in Denying Injunctive Relief.    38

    1. Requested Scope:    38

        (i) State Wide Prohibition of Use:    38

        (ii) Presumption of State-Wide Rights:    39

        (iii) Actual Use and Business Transactions:    41

        (iv) All Speech Mediums:    43

        (v) Publicly Traded Stock Designation:    46

        (vi) Use of Appellant's Trade Name on the Internet:    46

    2. In Light of the Appellant's Evidence and the Virtual Absence of Appellee's Evidence to the Contrary the Court Denied Appellant's Injunctive Relief without Any Basis in Guiding Principles or Rules:    49

Issue#4: Did the District Court err in denying Appellant's Injunctive Relief based on Balancing the Equities and/or Unclean Hands.                    51

    A.   Balancing the Equities:                    51

    B.   Overly Broad:                    56

    C.   Unclean Hands:                    59

Issue #5: Did the District Court err in vacating the Jury's Attorney Fee award.                    62

Conclusion                    63

Prayer                    65

Certificate of Service                    66

Certificate of Brief                    67

Appendices

    Appendix 1: Copy of the Trial Court's Judgment

    Appendix 2: Copy of Jury Charge

    Appendix 3: Record Excerpts of Court's Directed Verdict

# TABLE OF AUTHORITIES

**Page**

**Cases:**

*2300, Inc. v. City of Arlington,* 888 S.W.2d
123 (Tex. App.--Fort Worth 1994, no writ)          25,29

*Abercrombie and Fitch Co. v. Hunting World,
Inc.,* 537 F.2d 4 (2nd Cir. 1976)          12

*All Am. Builders, Inc. v. All Am. Siding of
Dallas, Inc.,* 991 S.W.2d 484, (Tex. App.-Fort
Worth 1999, no pet.)          24

*Bd. of Trustees v. Fox,* 492 U.S. 469,
109 S.Ct. 3028, 106 L.Ed.2d 388 (1989)          44

*Black Hills Jewelry Mfg. Co. v. Gold Rush,
Inc.,* 633 F.2d 746 (8th Cir.1980)          17,26,33

*Brennan's, Inc. v. Brennan's Rest., L.L.C.,*
360 F.3d 125 (2d Cir.2004)          17,26,33

*Camarena v. Texas Employment Comm'n,*
754 S.W. 2d 149, 151 (Tex. 1988)          30

*Cameron County v. Velasquez,* 668 S.W.2d
776 (Tex.App.--Corpus Christi 1984, writ
ref'd n.r.e.)          23

*Cano v. Macarena,* 606 S.W.2d 718 (Tex. App.-
Corpus Christi, 1980)          40

*Central Hudson Gas & Electric Corp. v. Public
Service Commission of New York,* 447 U.S. 557,
100 S. Ct. 2343, 65 L.Ed.2d 341 (1980)          44-45

**Page**

*Chemlawn Servs. Corp. v. GNC Pumps, Inc.*,
690 F. Supp. 1560 (S.D.Tex.1988)                    30,34

*Circuit City Stores, Inc. v. CarMax, Inc.*,
165 F.3d 1047 (6th Cir.1999)                        17,26,34

*Craddock v. Sunshine Bus Lines*, 134 Tex. 388,
133 S.W.2d 124, 126 (Tex.Comm.App.--1939,
opinion adopted)                                    49

*Davis v. Huey*, 571 S.W.2d 859 (Tex. 1978)         29,49

*Douglas v. Walker*, 707 S.W.2d 733, 734
(Tex. App.--Beaumont 1986, no writ)                 14

*Downer v. Aquamarine Operators, Inc.*, 701
S.W.2d 238 (Tex.1985), cert. denied, 476
U.S. 1159, 106 S. Ct. 2279, 90 L.Ed.2d 721
(1986)                                              25,29

*Dunnagan v. Watson*, 204 S.W.3d 30
(Tex. App.—Fort Worth 2006, pet. denied)            59

*Enter. Int'l, Inc. v. Corporacion Estatal
Petrolera Ecuatoriana,* 762 F.2d 464
(5th Cir.1985)                                      32

*Flores v. Flores,* 116 S.W.3d 870 (Tex. App.—
Corpus Christi 2003, no pet.)                        59

*Florida Bar v. Went For It,* 515 U.S. 618,
115 S. Ct. 2371, 132 L.Ed.2d 541 (1995)             45

*Fuji Photo Film Co. v. Shinohara Shoji
Kabushiki Kaisha*, 754 F.2d 591 (5th Cir.1985)      16

*Gonzalez v. Zamora,* 791 S.W.2d 258 (Tex. App.
-Corpus Christi, 1990)                              58

**Page**

*GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199 (9th Cir. 2000)   17,26,34

*Hellenic Inv. v. Kroger Co.*, 766 S.W.2d 861 (Tex. App.-Houston [1st Dist.] 1989, no writ)   57

*Hitt v. Mabry*, 687 S.W.2d 791, 795 (Tex. App.- San Antonio 1985, no writ)   56

*Hudgens v. Goen* 673 S.W. 2d 420 (Tex. App- Waco, 1979)   22

*Isunai v. Manske-Sheffield Radiology Group,* 805 S.W. 2d 602 (Tex. App—Beaumont, 1991)   58

*Jeter v. Associated Rack Corp.*, 607 S.W.2d 272 (Tex. App.—Texarkana 1980, ref. n.r.e.)   18,35

*Jim Rutherford Investments Inc. v. Terramar Beach Community Ass'n.,* 25 S.W.3d 845(Tex. App. —Houston [14 Dist.] 2000, pet. den'd)   28

*Joy Mfg. Co. v. CGM Valve & Gauge Co.,* 730 F. Supp. 1387 (S.D.Tex.1989)

*Landry v. Travelers Insurance Co.,* 458 S.W. 2d 649 (Tex. 1970)   49

*Lazy M Ranch, Ltd. v. TXI Operations, LP,* 978 S.W.2d 678 (Tex. App.-Austin 1998, pet. denied)   59-60

*Light v. Centel Cellular Co,* 883 S.W.2d 642 (Tex. 1994)   58

*Lower Nueces River Water Supply Dist. v. Live Oak County*, 312 S.W.2d 696, 701 (Tex. Civ. App.-San Antonio 1958, writ ref'd n.r.e.)   56

**Page**

*McAfee MX v. Foster*, No. 02-07-080-CV, 2008 WL
344575, at *2, 2008 Tex.App. LEXIS 968, at *8
(Tex.App.-Fort Worth Feb. 7, 2008, pet. denied),
petition for cert. filed, No. 08-639
(U.S. Nov. 12, 2008)                                    52

*McAx Sign Co., Inc. v. Royal Coach, Inc.*,
547 S.W.2d 368, 369 (Tex.Civ.App.--Dallas
1977, no writ)                                          1

*McDonald's Corp. v. Robertson,* 147 F.3d 1301,
(11th Cir.1998)                                         17,26,34

*Miller v. Lone Star Tavern, Inc.* 593 S.W.2d 341
(Tex. Civ. App.--Waco 1979, no writ)                   22

*Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447,
98 S.Ct. 1912, 56 L.Ed.2d 444 (1978)                   44

*Pappan Enters., Inc. v. Hardee's Food Sys.,
Inc.,* 143 F.3d 800, 805 (3d Cir.1998)                 17,26,34

*Parkem Indus. Servs., Inc. v. Garton* 619 S.W.
2d 428 (Tex. Civ. App.—Amarillo 1981, no writ)         29

*Pebble Beach Co v.Tour 18 I Ltd.,*
942 F. Supp. 1513 (S.D. Tex., 1996)                    12

*Pebble Beach Co. v. Tour 18 I, Ltd.,*
155 F.3d 526 (5th Cir. 1998)                           13

*Physicians and Surgeons Gen. Hosp. v.
Koblizek* 752 S.W. 2d 657 (Tex. App.—Corpus
Christ, 1988)                                          23-24

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 385, 93 S. Ct. 2553, 37 L.Ed.2d 669 (1973) 44

*Pro Hardware, Inc. v. Home Ctrs. of America, Inc.,* 607 F.Supp. 146, 154 (S.D.Tex.1984) 30,34

*Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.,* 83 F.Supp.2d 810, 831 (S.D.Tex.1999) 27,33

*Recon Exploration, Inc. v. Hodges*, 798 S.W.2d 848 (Tex. App.--Dallas 1990, no writ) 29,49

*Rescuecom Corp. v. Google, Inc.* 562 F.3d 123 (2d Cir. 2009) 48

*S. Monorail Co. v. Robbins & Myers, Inc.,* 666 F.2d 185, 188 (5th Cir. Unit B 1982) 27,33

*Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439 (Tex.1984) 49

*Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 640 (1st Cir.1992) 17

*Soweco v. Shell Oil Co.,* 617 F.2d 1178, (5th Cir.1980), cert. denied, 450 U.S. 981, 101 S. Ct. 1516, 67 L.Ed.2d 816 19

*Storey v. Cent. Hide & Rendering Co.,* 148 Tex. 509 226 S.W.2d 615, 618–19 (1950) 51–52

*Texas Soc. v. Ft. Bend Chapter*, 590 S.W.2d 156 (Civ. App.—Texarkana 1980, ref. n.r.e.) 18,35

*Thompson v. W. States Med. Ctr.,* 535 U.S. 357, 122 S. Ct. 1497, 152 L.Ed.2d 563 (2002) 45

*Thompson v. Thompson Air Conditioning & Heating, Inc.,* 884 S.W.2d 555, (Tex. App.-Texarkana 1994, no pet.)                                                  24

*Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891 (7th Cir.2001)                                      17,26,33

*Union Gas Corp. V. Gisler,* 129 S.W. 3d 245 (Tex. App.-Corpus Christi, 2003)                       60-61

*Union Nat'l Bank v. Union Nat'l Bank,* 909 F. 2d 839 (5th Cir. 1990)                                     12

*Webb v. Glenbrook Owners Association, Inc.,* 98 S.W.3d 374, 384 (Tex. App.—Dallas, 2009)            57

*Zapata v. Zapata* 841 S.W. 2d 45 (Tex. App.— Houston [14[th] Dist], 1992)                           1-12,16, 19,31

**Statutes:**

Tex. Bus. & Comm. Code § 16.15(c) (1968)            40

Tex. Bus. & Comm. Code s 16.27(a) (1968)            40

**STATEMENT OF THE CASE**

This is an appeal of an adverse ruling by the District Judge following a favorable jury verdict on the issue of common law trade name infringement. **[Appendix 1].** Because the Order/Judgment is vague as to the basis of the Court's ruling, Appellant must address all conceivable basis for the District Court's decision *McAx Sign Co., Inc. v. Royal Coach, Inc.*, 547 S.W.2d 368, 369 (Tex.Civ.App.--Dallas 1977, no writ).

It is the Appellant's contention that to the extent the Court's decision was based upon the Appellee's Motion to Set Aside the Jury Verdict **[Clerk's Record, pp.143-156]**[1] the Court erred in so doing. The Court had directed a verdict that Appellant was the senior user **[Reporter's Record: Volume V: 150-151]**[2] and the jury found that Tesoro Corporation was both the Appellant's trade name and that the Appellee had created likelihood of confusion **[RR:XI:75].** To the Extent the Court's decision was based upon the Appellee's Motion to set

---

[1]   There is only one volume of the Clerk's record. Hereinafter CR: page.
[2]   Hereinafter, RR:Vol: Page.

aside based on improper jury issues **[CR:143–156]** the Court again erred because the only two issues presented, violation of the common law trade infringement and declaratory relief were in fact one in the same, in other words they necessarily related, and the Appellee was on full notice as to what was being pled and requested. To the extent the Court left the jury verdict intact, but based its ruling on a lack of irreparable injury or the presence of discernable damages at law the Court again erred. Appellant put on more than sufficient evidence both at trial and in the Permanent Injunction hearing to show non-speculative, unquantifiable injury that cannot be adequately compensated at law. To the extent the Court denied Appellant's injunctive relief based upon the application of unclean hands or a balancing of the equities Appellant contends the Appellee was the only party which appeared in court with unclean hands and that over the course of the trial it gave the Trial Court no equities on its behalf in which to balance against Appellant's needs. Finally, to the degree that

2

the Court did base its ruling on Appellant's failure to demonstrate its right to injunctive relief, the denial of attorney's fees stipulated to by both parties was based upon the successful jury finding and should not have been disturbed

## STATEMENT REGARDING ORAL ARGUMENT

While the law on the issue of trade name and trademark infringement is well developed, the facts of this case present many issues the Court found novel, or difficult to resolve. One of the specific aspects of the case factually was the admission by the Appellee that it knew the Appellant owned the name and after being refused the use or the purchase of the name, it proceeded to use the name anyway under the "assumed name" provisions of Texas law. Furthermore, evidence at trial revealed the Appellee knew there was the risk of a trade name infringement claim **[RR:V:41–44, 61–71; IX:87].** At one point in the proceeding the court even confronted the Appellee with the fact that Appellee's usurpation of the name may have been fraudulent

3

**[RR:XI:61].** Appellant therefore contends that oral argument is not only appropriate but necessary.

## ISSUES PRESENTED

### Issue #1

Did the District Court err in Granting the Appellee's Motion to Set Aside the Jury Verdict based upon failure to Establish Irreparable Harm and Lack of Adequate Remedy at Law?

### Issue #2

Did the District Court err in Granting the Appellee's Motion to Set Aside the Jury Verdict based on Improper Jury Instructions.

### Issue #3

Even if the Court Rejected the Appellee's Motion to Set Aside Jury Verdict Did the District Court err in Denying Appellant's Request for Permanent Injunction after the Full Hearing.

### Issue#4

Did the District Court err in denying Appellant's Injunctive Relief based on Balancing the Equities and Unclean Hands.

### Issue #5

Did the District Court err in vacating the Jury's Attorney Fee award.

**STATEMENT OF FACTS**

Appellant Tesoro Corporation is a Donna, Texas sign leasing and sales business that has been in existence since 1975. The owner of Tesoro Corporation, Mr. Paul Sullivan secured the name Tesoro Corporation in 1975 and has held it continuously every since that time **[RR:IV:43-45]**. According to Appellee's general counsel, Charles Parrish, Appellee was formed as a Delaware corporation in 1968 under the name Tesoro Petroleum Corporation and in 1969 applied to do business in Texas as Tesoro Petroleum Corporation **[RR:V:38]**. Appellee has no business operations in Texas aside from its corporate headquarters in San Antonio where it has been since the inception of Appellee's existence **[RR:IX:93]**. Although Appellant does do business as Triple A signs, its clients remit payment and know his business as Tesoro Corporation, his business operations and banking relationships are conducted as Tesoro Corporation, and his tax returns all reflect Tesoro Corporation **[RR:IV:58-126]**. Evidence at trial indicated Appellant did business

5

across Texas including Amarillo, Dallas, Houston, and San Antonio, where Appellee is headquartered **[RR:IV:48-49,78; RR: VIII: 103-123, 214]**.

The evidence presented at trial shows that in 2004 Appellee approached Mr. Sullivan and one of his employees and asked to either pay to use the name or to purchase the name. Appellant's agents clearly refused both requests **[RR:IV:192-200; RR:V:6-16]** and the evidence showed that Appellee nevertheless made a corporate decision to proceed to use the Appellant's trade name **[RR:V:61-71]**, enlisted the assistance of Fulbright & Jaworski, and filed an assumed name certificate with the Texas Secretary of State **[RR:V:41-44]**.

The attorney for Fulbright & Jaworski that effectuated the name change and use of the name was Carrie Platt/Ryan**[RR:V:41-44]**. Appellee actually checked the availability of the name and found that Appellant was the registered owner and the name was therefore not available. The Texas statute in effect in 2004 was the same as the statute today and

prohibited the use of identical or deceptively similar names. That statute applied to the use of "Tesoro Corporation" as an assumed name in Texas if it was already taken, which in this case, it was, thus prohibiting Appellee from using the name even as an "assumed name" in Texas. **[RR:V:61–71].**

Appellee approached Appellant, through Carrie Platt's secretary, Darcy Angel and was unable to secure the use or ownership of the name. Appellee was advised by legal counsel of the legal ramifications of using Tesoro Corporation as an assumed name and nevertheless took the assumed name Tesoro Corporation knowing it could be sued for trade name infringement and that Appellant was the owner of that name **[RR:V:61–71; RR:IV:192–200; RR:V:6–16].**

In 2004, shortly after Tesoro Petroleum changed its name, Appellant began to get complaints that its railroad cars were damaging property, that its trucks were causing damage, and/or its employees were cutting fence locks. Appellant had no railroad cars, tanker trucks or the need to cut fences. The conduct,

7

railroad cars, trucks, and employees belonged to Appellee, Tesoro Petroleum, which had now changed its name to take Appellant's name **[RR:IV:127–129]**. Then in 2009 Union Pacific Railroad, a potential customer of both Appellant and Appellee, albeit for different services, began making demands for money on Appellant. What followed and continued through to the present were demands for damages from other railroads, threats of sanctions from Texas governmental agencies like the insurance department and attorney general's office, law firms from as far away as Washington and Alaska sending demand letters to Appellant for conduct and actions of the Appellee and a continuous barrage of contact that made it clear that Tesoro Petroleum's name changed was causing actual confusion within Texas and nationwide. In addition, it became clear that potential lenders were confusing Appellant's credit with that of Appellee and the good standing of Appellant with that of Appellee. **[RR:IV:129–192,204–207].** In 2010 a consumer/client of Appellant counter sued Appellant in Hidalgo County for conduct attributable to Appellee.

Richard Schell, the attorney who filed the complaint for the Defendant, had done research on Tesoro Corporation and due to the confusion created by Appellee's usurpation of Appellant's name, had come to believe that the Appellant was misrepresenting itself and its identity **[RR:IV:259-271]**.

During trial Appellant's representatives testified as to the irreparable harm caused by Appellee's conduct **[RR:IV:127-128,129-192]** although from the outset the trial was bifurcated and the Court agreed to hear the issues relevant to the permanent injunction only after a jury verdict established liability and that any judgment would be based upon the jury verdict and the evidence adduced in the permanent injunction hearing **[RR: VIII: 59-62]**. At the Permanent Injunction hearing the Appellant's President, Paul Sullivan, testified to the on-going imminent harm caused by the confusion that the jury in fact found existed **[RR:VIII:70-103, 204-207]** and the fact that he could not calculate or predict the extent and degree of the potential harm **[RR:VIII:91-93, 204-207]**. Ironically, the Appellee's

sole witness on the issue, Gene Trevino, admitted the same thing both at trial and during the injunction hearing **[RR:VIII:235-236.RR:XI:26-30].**

## SUMMARY OF ARGUMENT

The District Court erred in granting the Appellee's Motion to Set Aside Jury Verdict. Having already granted Plaintiff's directed verdict on the issue of senior user, the Jury properly found that Tesoro Corporation was in fact Appellant's trade name and that the Appellee's use of Appellant's name created a likelihood of confusion among consumers. The jury was not required to find irreparable harm or adequate remedy at law, as that was an issue for the court to determine in the injunction phase of the case. The jury issues as to trademark infringement and declaratory relief were proper and more than adequately put Appellee on notice as to the Appellant's claims. With only equitable relief requested the Appellant clearly demonstrated both irreparable harm and the lack of any relief at law. Thus there was no basis for the Court

10

to have nullified the award of attorney's fees to the Appellant.

**ARGUMENT**

**Issue #1**

**Did the District Court err in Granting the Appellee's Motion to Set Aside the Jury Verdict based upon failure to Establish Irreparable harm and Adequate Remedy at Law?**

**A.  The Issue of Irreparable Harm is for the Court:**

The first basis of Appellee's Motion for Judgment and to Disregard is the assertion that *the jury failed to find irreparable harm* and therefore its verdict should be disregarded **[CR; 143-157].** In light of the law and how the case was tried, that assertion is invalid. The Appellee cited to *Zapata v. Zapata* 841 S.W. 2d 45 (Tex. App.—Houston [14th Dist], 1992) for the proposition that a jury must find irreparable harm. First of all, *Zapata* was decided on a directed verdict, the case never reached the jury nor was there a jury charge in that case.  In other words the Court decided the issue, not the jury. In this case, the only issues required to be submitted to a jury were submitted based

11

on the elements of common law trade infringement in Texas. To prevail in its common-law action for trade name infringement, Plaintiff has the burden to establish the following elements: (1) that the name it seeks to protect is eligible for protection, (2) that it is a senior user of the name, and (3) that there is a likelihood of confusion between its name and that of the other user, *Zapata Trading Corp v. Zapata Trading, Int'l, Inc.* 841 S.W. 2d 45, 47 (Tex. App.--Houston [14th Dist.] 1992, no writ) (citing *Union Nat'l Bank v. Union Nat'l Bank,* 909 F.2d 839 (5th Cir.1990)).

There was never an issue that the name was capable of protection. To determine the distinguishing capability of a mark or a trade name, and thus its eligibility for protection, courts employ the classic trademark continuum articulated in *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976); *Pebble Beach Co v. Tour 18 I Ltd.*, 942 F. Supp. 1513, 1537 (S.D. Tex., 1996). A mark or name may be (1) fanciful, (2) arbitrary, (3) suggestive, (4) descriptive, or (5) generic. Id. Fanciful, arbitrary,

and suggestive marks are inherently distinctive and therefore protectable without an additional showing of consumer identification. Id. At the other end of the continuum are generic marks, which are never protectable because they represent the name of the good or service itself and therefore cannot identify or distinguish a particular source. Id. Descriptive marks fall somewhere in between. These marks describe a characteristic of the good or service itself and may not be protected absent a showing that the mark has become associated in the minds of consumers with the particular, albeit unknown, source. *Pebble Beach Co.. v. Tour 18 I, Ltd.*, 155 F.3d 526 (5th Cir. 1998). This association is called secondary meaning. Id.

Appellant's trade name "Tesoro Corporation," derives from the Spanish name for "treasure" and in addition to being at the far end of the spectrum where names are protectable without any showing of consumer identification, the evidence adduced at trial shows that after 37 years of business Tesoro Corporation has also acquired consumer identification. Evidence

showing long and extensive use has been held sufficient to prove a trade name has acquired secondary meaning. *Douglas v. Walker*, 707 S.W.2d 733, 734 (Tex. App.-- Beaumont 1986, no writ).

In this case, Appellant was willing to allow Defendant to call itself Tesoro Petroleum, it simply would not allow Appellee to use Tesoro Corporation. If the Appellant's trade name had no importance the Appellee would have not begun to use it without permission, nor would it be so resistant in relinquishing the name. The Texas Secretary of State's office clearly recognized the combination of Tesoro and Corporation into one name as being worthy of registration and the evidence at trial demonstrated that the Defendant thought it was protectable enough to seek to use or buy it before simply trying to usurp the name **[RR:V:9-15, RR:V:41-4; RR: V:60-72; RR:V:84-87]**.

Appellee tried to argue that it, not the Appellant, was the senior user. The Court granted a directed verdict in Appellant's favor on the issue of senior user before the jury phase of the trial began **[RR:V:**

14

**150-151; RR:XI:35]** The Appellee is simply wrong about the issue. It has never been about who was the senior user of "Tesoro" or "Tesoro Petroleum" but rather who was the senior user of "Tesoro Corporation." The jury found that "Tesoro Corporation" was Plaintiff's trade name and by using that exact name, Defendant caused actual confusion **[RR:XI:75].** In this case the evidence showed that the senior user of "Tesoro Corporation" was not disputed, every Defendant witness, whether offered by the Defendant or the Plaintiff had testified that Plaintiff was the senior user of the name at issue "Tesoro Corporation" **[RR:V:84-85; RR:V:61-72].** Having rejected the Defendant's argument that the fight was over the name "Tesoro" and not "Tesoro Corporation," it was entirely appropriate to grant directed verdict for the Plaintiff as to the senior user of "Tesoro Corporation" when even the Defendant admitted that to be the case.

## B. There Was Irreparable Harm:

Thus Appellee was left with the argument that there was no irreparable harm. However, a finding of

15

likelihood of confusion brings with it a presumption of irreparable harm. So the analysis, much like that in *Zapata v. Zapata* also cited herein above, is whether there was "evidence" to support a particular finding. In this case, just as in *Zapata v. Zapata* 841 S.W. 2d 45, 48-49, the Plaintiff demonstrated actual confusion **[RR:IV: 129-192; RR:IV: 259-270]** and proof of actual confusion is probative evidence that likelihood of confusion exists, *Zapata Trading Corp v. Zapata Trading, Int'l, Inc.* 841 S.W. 2d 45, 48 (Tex. App.— Houston [14th Dist] 1992 no writ). In fact, once actual confusion is proved, an almost overwhelming amount of proof is necessary to refute the existence of a likelihood of confusion. Id.; see also *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisha*, 754 F.2d 591, 597 (5th Cir.1985). In this case not only was there proof of actual confusion as cited herein above, but the record reflects no real effort by the Defendant to refute the actual confusion. Once the jury found likelihood of confusion the irreparable nature of the harm was established and the Court was free to presume

16

irreparable injury, *See Brennan's, Inc. v. Brennan's Rest., L.L.C.,* 360 F.3d 125, 129 (2d Cir.2004); *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 902 (7th Cir.2001); *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1209 (9th Cir. 2000); *Circuit City Stores, Inc. v. CarMax, Inc.,* 165 F.3d 1047, 1056 (6th Cir.1999); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1310 (11th Cir.1998); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 805 (3d Cir.1998); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 640 (1st Cir.1992); *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.,* 633 F.2d 746, 753 n. 7 (8th Cir.1980).[3]

**C.   There is no Adequate Remedy at Law:**

The corollary to lack of irreparable harm is the argument that there is an adequate remedy at law. The determination of whether an adequate remedy at law exists is not a mechanical task. The mere existence of a remedy at law is not a ground for a denial of

---

[3]  At trial and during hearings the Appellee tried to argue that because these cases were temporary and not permanent injunction cases, the presumption should not apply.  There is no valid reason to  limit the presumption to temporary status quo relief versus permanent injunctive relief.

injunctive relieve unless the legal remedy is as practical and efficient to the ends of justice as the equitable remedy, *Jeter v. Associated Rack Corp.*, 607 S.W.2d 272, 278 (Civ. App.—Texarkana 1980, ref. n.r.e.). Thus, while a plaintiff may have a right to bring an action for damages, that remedy is inadequate if damages cannot be calculated. *Texas Soc. v. Ft. Bend Chapter*, 590 S.W.2d 156, 159 (Civ. App.—Texarkana 1980, ref. n.r.e.).

As set out in the testimony of Paul Sullivan it is impossible to calculate monetary damages **[RR:IV:129-192: RR: VIII: 70-103].** The instances of confusion are continuous and haphazard. The effects on credit and goodwill are impossible to gauge and may be immediate, or may create long-term problems that do not immediately manifest themselves. Since it is impossible to know when the confusion will again re-surface, it is equally impossible to prepare for the problems or to take prospective action to mitigate harm. The impossibility of calculating damage in part contributed to the Plaintiff's decision to drop his monetary claims

prior to the commencement of the jury trial. Appellant simply could not calculate the harm in a monetary sense.

## Issue #2

**Did the District Court err in Granting the Appellee's Motion to Set Aside the Jury Verdict based on Improper Jury Charge and Instructions.**

The Appellee would have the Court believe that the failure to present "irreparable injury" to the jury is defective and precludes granting a summary judgment. It cites a long list of cases including *Zapata v. Zapata* 841 S.W. 2d 45 (Tex. App.—Ho [14th Dist], 1992) for the proposition that a jury must find irreparable harm. That statement is blatantly incorrect. In a trademark infringement case the question of "likelihood of confusion" is a question for the trier of fact. *Zapata v. Zapata* 841 S.W. 2d 45, 49. See also *Soweco v. Shell Oil Co.*, 617 F.2d 1178, 1186 (5th Cir.1980), cert. denied, 450 U.S. 981, 101 S. Ct. 1516, 67 L.Ed.2d 816 The only matters submitted to a jury in Texas are the elements of a cause of action that a jury is

required to answer. There is no jury charge in Texas for a permanent injunction because a permanent injunction and the elements require of it are to be determined by the Court in its sound discretion.

The Jury charge in this case was as follows:

> Question one. Do you find from a preponderance of the evidence that Tesoro Corporation is the trade name of the Plaintiff? A trade name is any designation which is adopted and used by a person to denominate goods which the markets or services which he renders or a business which he conducts or has come to be so used by others.
>
> Answer yes or no.
>
> If you answered yes to question number one, then answer question number two. Otherwise, do not answer question number two.
>
> Question number two. Do you find from a preponderance of the evidence that there exists a likelihood of confusion between the Plaintiff's corporation and the Defendant's corporation by any consumer?
>
> Answer yes or no. **[RR:VI:6–7].**

The Appellee's only objections to the Court' charge and instructions**[RR: V: 164–170; RR: XII: Exhibit 1]** wholly failed to raise any issue as to the submission of irreparable harm and/or adequate remedy at law, an

20

objection it raised for the first time in its Motion to Disregard two months later.

In the hearing on May 21, 2013 the Appellee attempted to argue that because there was a claim for common law trademark infringement and a claim for a declaratory action, that some how these claims were "separate' and their elements were not "necessarily referable" to one another, and that by failing to present the issue of irreparable harm to the jury the Appellee had not know what it need to respond to **[RR:VII:31–38].** The key to the Appellee's argument lies in the declaratory judgment action not being necessarily referable to the common law trademark infringement case. The facts of each were identical. There were no "two unrelated claims" such that the Appellee would have been confused as to which claim was being asserted. In this case there was only one claim, common law trademark infringement, the declaratory action was simply a mode of relief, it did not have one single different fact or element and the Appellee's failure to object was fatal to its claim **[CR:34–35].** To

21

give any credence to the Appellee's contention would be to say "we were confused by the claim for relief under the common law trademark infringement cause of action and by the request that the Court declare Defendants actions a violation of Texas Common law trade infringement law." It is simply not a tenable argument.

The Defendants cite to *Hudgens v. Goen* 673 S.W. 2d 420 (Tex. App-Waco, 1979) for the same proposition and that case is equally flawed. In *Hudgen*s the cause of action was not common law trade infringement, but unfair competition. Based on *Miller v. Lone Star Tavern, Inc.* 593 S.W.2d 341 (Tex. Civ. App.--Waco 1979, no writ) irreparable harm was a necessary third element of the main cause of action, not the injunctive relief. More important, the Court then went on to say that the third element found in Miller, of irreparable harm, was not required for a plaintiff to be entitled to injunctive relief when the cause of action is based on unfair competition *Hudgens v. Goen* 673 S.W. 2d 420, 423. In this case, irreparable harm has never been an element of a trade infringement case. Rather it is an

element of a permanent inunction and that issue is left to the Court which must look to the underlying evidence, not the jury charge.

In an amendment to its Motion to Set Aside **[CR: 143-156]** appellee cited to *Physicians and Surgeons Gen. Hosp. v. Koblizek* 752 S.W. 2d 657, 660 (Tex. App.—Corpus Christ, 1988) that seems to stand for the proposition that having refused to submit a jury question, this Court could not have previously made the determination that there was no question of fact to submit to the jury and therefore could not have granted a directed verdict. That is not what *Physicians and Surgeons Gen. Hosp. v. Koblizek* stands for. Rather, that case stands for the following proposition:

> The trial court was not authorized to find on its own that the answers found by the jury created an unreasonable risk of harm. That was a disputed and essential factual issue which was never requested by appellees or presented to the jury. The trial court was prevented from making a finding on the omitted issue and such circumstances require that judgment be rendered for appellant. *Cameron County v. Velasquez*, 668 S.W.2d 776, 781 (Tex.App.--Corpus Christi 1984, writ ref'd n.r.e.).

In *Physicians and Surgeons Gen. Hosp. v. Koblizek* the trial judge had refused an issue on whether the hospital "knew" that the conditions of its floor had created an unreasonable risk of harm. ***That was an essential element of the cause of action (Emphasis Added)*** and it remained disputed after the presentation of evidence. Irreparable harm/adequate remedy at law is simply not an essential element of a common law trade infringement case, both become relevant only in the event of a request for injunctive relief which falls squarely into the realm of the trial judge's authority.

More important, in a common law trade infringement case the entire case can be tried to the Court and it determines both facts and law. *Thompson v. Thompson Air Conditioning & Heating, Inc.,* 884 S.W.2d 555, (Tex. App.-Texarkana 1994, no pet.); *All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.*, 991 S.W.2d 484, (Tex. App.-Fort Worth 1999, no pet.). In this case only the injunction phase has been bifurcated and just as in *Thompson,* the Court's findings of factual issues

24

relating to the injunctive relief are every bit as proper and binding as a jury's.

In granting a permanent injunction the standard of review is clear abuse of discretion by a trial court, not a jury. See *2300, Inc. v. City of Arlington,* 888 S.W.2d 123, 126 (Tex. App.--Fort Worth 1994, no writ). A trial court's ruling is however reversible on appeal if it acts without reference to any guiding rules and principles. See *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L.Ed.2d 721 (1986). Thus, the jury does not find "irreparable harm," it finds likelihood of confusion in an infringement case and the Court must look to the record to see if the Plaintiff has "evidence to support irreparable harm." In this case evidence clearly exists and there was no requirement to submit the issue to the jury. If a jury finding was necessary there would be no case law allowing the Court to grant or deny an injunction based on "conflicting evidence." A jury finding would take

that discretion from the Court and that is not the law in Texas.

Finally, the Appellee's argument completely overlooks the legal effect of the likelihood of confusion element that is submitted to a jury in a common law trade infringement case. In virtually every circuit in the United States the appeals courts have expressly adopted the holding that a court may presume irreparable injury upon finding a likelihood of confusion in a trademark case. *See Brennan's, Inc. v. Brennan's Rest., L.L.C.,* 360 F.3d 125, 129 (2d Cir.2004); *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 902 (7th Cir.2001); *GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1209 (9th Cir. 2000); *Circuit City Stores, Inc. v. CarMax, Inc.,* 165 F.3d 1047, 1056 (6th Cir.1999); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1310 (11th Cir.1998); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 805 (3d Cir.1998); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 640 (1st Cir.1992); *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.,* 633 F.2d

746, 753 n. 7 (8th Cir.1980). Although the 5th Circuit has not expressly adopted the holding it has done so implicitly in *S. Monorail Co. v. Robbins & Myers, Inc.,* 666 F.2d 185, 188 (5th Cir. Unit B 1982) and districts throughout the Fifth Circuit recognize that a finding of likelihood of confusion is a finding of irreparable harm/injury. *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.,* 83 F.Supp.2d 810, 831 (S.D.Tex.1999). In short, Appellee's argument as to the charge fails at every level and because of the unique nature of an infringement case, the likelihood of confusion finding establishes irreparable harm.

In addition, the argument is disingenuous given the fact that the Appellee knew that the case would be tried in a bifurcated manner, with the entire injunction issue left to the Court. The Appellee even filed and had granted, a motion for continuance seeking time to develop more evidence for the injunction phase and in fact have took the Appellant's deposition for a third time in this case. The argument of a defective jury charge has no merit.

## Issue #3

**Even if the Court Rejected the Appellee's Motion ot Set Aside Jury Verdict Did the District Court err in Denying Appellant's Request for Permanent Injunction after the Full Hearing.**

In light of the facts that the Appellant won a jury verdict as to Tesoro Corporation being its trade name and the Appellee's use of that name creating the likelihood of consumer confusion, was given a directed verdict as to being the senior user, and presented in evidence at trial and the permanent injunction hearing of irreparable harm and no adequate remedy at law, the Trial Court erred in denying injunctive relief.

To obtain a permanent injunction, a plaintiff must prove (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *Jim Rutherford Investments Inc. v. Terramar Beach Community Ass'n.,* 25 S.W.3d 845, 849 (Tex. App.—Hous. [14 Dist.] 2000, pet. den'd). In the present case the Plaintiff has established its common law trade infringement claim and has therefore

28

established the existence of a wrongful act which in addition to be wrongful, is on-going. Therefore, what the Court must determine is the existence of the remaining three elements.

## A. Standard of Review:

In granting a permanent injunction the standard of review is clear abuse of discretion. See *2300, Inc. v. City of Arlington,* 888 S.W.2d 123, 126 (Tex. App.--Fort Worth 1994, no writ). A trial court's ruling must be based upon some reference guiding rules and principles. See *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex.1985), cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L.Ed.2d 721 (1986). An abuse of discretion exists where the trial court lacks evidence in the record which reasonably supports that trial court's decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Recon Exploration, Inc. v. Hodges*, 798 S.W.2d 848, 852 (Tex.App.--Dallas 1990, no writ).

## B. Imminent Harm:

In order to justify a permanent injunction the underlying injury must be real and substantial *Parkem*

*Indus. Servs., Inc. v. Garton* 619 S.W. 2d 428, 430 (Tex. Civ. App.—Amarillo 1981, no writ). An injunction will not issue to prevent merely speculative harm, *Camarena v. Texas Employment Comm'n,* 754 S.W. 2d 149, 151 (Tex. 1988). In this case the harm was and is both real and on-going. The evidence adduced at trial shows a clear confusion created by the Defendant's use of Texas Tesoro's name. Appellant demonstrated actual confusion **[RR:IV:129-192; RR:IV:259-270]** and based in part on that evidence, the jury found likelihood of confusion. Where likelihood of confusion exists in a trademark or trade name case, the case law in Texas is clear that the plaintiff's lack of control over the nature and quality of the defendant's goods or services constitutes an immediate (and in fact irreparable injury), regardless of the actual quality of those goods or services. *See Joy Mfg. Co. v. CGM Valve & Gauge Co.,* 730 F. Supp. 1387, 1394 (S.D.Tex.1989); *Chemlawn Servs. Corp. v. GNC Pumps, Inc.,* 690 F.Supp. 1560, 1569 (S.D.Tex.1988); *Pro Hardware, Inc. v. Home*

30

*Ctrs of America, Inc.,* 607 F. Supp. 146,154 (S.D.Tex.1984).

As set out above, evidence of the imminence of the harm to the Plaintiff was adduced in the testimony from Richard Shell and from Paul Sullivan that showed based on the actual confusion there was a real and on-going damage to the Appellant's business in Texas. In addition, since the trial, additional events testified to by Mr. Sullivan show that the Defendant's actions now had Appellant identified in the public forum as a "Donna based" oil and gas company **[RR:VIII:70–103, RR:XIV: Exhibit 2, pp.11].** Appellant clearly had and has no control over the actions and business practices of Appellee and the Appellee's perceived presence in Texas completely overshadows the business enterprise of Appellant even though the two companies are in different businesses. Again, it bears repeating that Plaintiff's evidence of actual confusion was never refuted by any Defense witness and proof of actual confusion is probative evidence that likelihood of confusion exists, *Zapata Trading Corp v. Zapata*

*Trading, Int'l, Inc.* 841 S.W. 2d 45, 48 (Tex. App.—Houston [14th Dist] 1992 no writ), a fact that did not escape the jury.

## C. Irreparable Injury and Adequate Remedy at Law:

Irreparable injury and adequate remedy at law although distinct elements of a permanent injunction often become intertwined because proof of an irreparable injury in many cases is done by showing that there is no adequate remedy at law. Appellee has red to focus on the magnitude of harm and somehow downplay the actual damage to Appellant. However, federal courts have long recognized that it is not so much the magnitude but the irreparability that counts for purposes of an injunction and ....[A]n injury is irreparable only if it cannot be undone through monetary remedies .... The absence of an available remedy by which the movant can later recover monetary damages ... may ... be sufficient to show irreparable injury. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana,* 762 F.2d 464, 472—73 (5th Cir.1985).

**1. Irreparable Injury:**

At least one district court in the Fifth Circuit has held that in a trademark case, "[w]hen a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services not only shows imminent harm, but constitutes an irreparable injury, regardless of the actual quality of those goods or services." *Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.,* 83 F.Supp.2d 810, 831 (S.D.Tex.1999). The Fifth Circuit has neither expressly adopted or a rejected the notion of a presumption of irreparable injury where likelihood of confusion has been shown to exist, *S. Monorail Co. v. Robbins & Myers, Inc.,* 666 F.2d 185, 188 (5th Cir. Unit B 1982). But, as set out previously herein, several other federal circuits have addressed this issue and expressly held that a court may presume irreparable injury upon finding a likelihood of confusion in a trademark case. *See Brennan's, Inc. v. Brennan's Rest., L.L.C.,* 360 F.3d 125, 129 (2d Cir.2004); *Ty, Inc. v. Jones Group, Inc.,* 237 F.3d 891, 902 (7th Cir.2001);

*GoTo.com, Inc. v. Walt Disney Co.,* 202 F.3d 1199, 1209 (9th Cir. 2000); *Circuit City Stores, Inc. v. CarMax, Inc.,* 165 F.3d 1047, 1056 (6th Cir.1999); *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1310 (11th Cir.1998); *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,* 143 F.3d 800, 805 (3d Cir.1998); *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc.,* 982 F.2d 633, 640 (1st Cir.1992); *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.,* 633 F.2d 746, 753 n. 7 (8th Cir.1980).

Even absent a presumption based on likelihood of confusion the courts have held that factually an injury is also irreparable when compensatory damages are extremely difficult to calculate. *See Chemlawn Servs.,* 690 F. Supp. at 1569; *Pro Hardware,* 607 F. Supp. at 154. Mr. Sullivan has provided more than adequate evidence of irreparable harm/inadequate remedy at law at this hearing and in the trial **[RR:IV: 127-192; RR: VIII: 70-103].**

**2. Adequate Remedy at Law:**

The determination of whether an adequate remedy at law exists is not a mechanical task. The mere existence of a remedy at law is not a ground for a denial of injunctive relief unless the legal remedy is as practical and efficient to the ends of justice as the equitable remedy, *Jeter v. Associated Rack Corp.*, 607 S.W.2d 272, 278 (Civ. App.—Texarkana 1980, ref. n.r.e.)]. Thus, while a plaintiff may have a right to bring an action for damages, that remedy is inadequate if damages cannot be calculated. *Texas Soc. v. Ft. Bend Chapter*, 590 S.W.2d 156, 159 (Civ. App.—Texarkana 1980, ref. n.r.e.).

As set out in the testimony of Paul Sullivan during the permanent injunction portion of this proceeding, it is impossible to calculate damages. The instances of confusion are continuous and haphazard. The effects on credit and goodwill are impossible to gauge may be immediate, or may create long-term problems that do not immediately manifest themselves. Since it is impossible to know when the confusion will again surface, it is equally impossible to prepare for the problems or to

take prospective action to mitigate harm. He simply could not calculate the harm in a monetary sense **[RR:VIII:208–210.**

Appellee's sole effort to establish an adequate remedy at law was the testimony of its expert, Gene Trevino. Trevino's entire testimony as to damages was restricted to the cost of hiring someone to handle telephone calls relating to the on-going confusion generated by the Appellee's wrongful usurpation of Appellant's name **[RR:VIII:225–227].** However, Trevino and the Appellee completely ignored all of the other harm and the inability to calculate that harm, in great part because Mr. Trevino's client simply told him not to look into that area of damage.

It as clear from Trevino's trial testimony and his deposition testimony that he only addressed "some of the elements" of economic damages **[RR:VIII:228].** When pressed, Trevino admitted he was not even asked to try and calculate economic damage. He claims there is no economic loss, yet never did a calculation to make that determination nor did he ever look at documents that

would have enabled him to even address the issue **[RR:VIII:229–232]**. In his own words, "I didn't do anything." **[RR:VIII:232]**. However, the lack of a clearly discernable economic loss is the very essence of irreparable harm that lacks a clear remedy at law. Therefore, with no other evidence, other than Paul Sullivan, Richard Schell, and the voluminous documents provided as exhibits showing the inability to calculate past economic harm, how can the Appellee even argue as to either the extent of the harm or its irreparable nature? It cannot.

When asked directly to confront the issue of future harm, Trevino fell back on his telephone answering cost analysis and then admitted, he was not asked to do a calculation of future economic harm **[RR:VIII:232–233]**. Then after admitting he had no basis for any of his numbers, he admitted he had no way of know the degree, the frequency, or the intensity of any future confusion and harm and that no one could ascertain that **[RR:VIII:234–236]**. More important he was not asked, and therefore did not perform, any calculation on loss

of good will, loss of reputation, loss of credit, future attorney's fees or any other factor. The only quantifiable damage he calculated was phone calls, because in the end he was not asked to do anything else and so he did not **[RR:VIII:236-239, 243-246].** The problem is the Appellee should have done so because Mr. Trevino was the only witness offered to refute the Appellant's case on irreparable harm and lack of adequate remedy at law and by his own admission he looked at only one narrow area.

**D. The Record Shows a Complete Absence of any Guiding Principles or Rules Upon Which the Court Relied in Denying Injunctive Relief.**

**1. Requested Scope:**

**(i) State Wide Prohibition of Use:**

The Appellant requested an injunction preventing the Appellee from using the Plaintiff's trade name anywhere in the state of Texas **[RR:IV:175-176;RR:XI:36-36;CR:297-303].** The harm that has befallen the Appellant has flowed directly from the Appellee's assumed name filing. In effect consumers and business entities are searching the Texas Secretary of State

data basis and finding Tesoro Corporation listed as a San Antonio based oil & gas company.  To allow the Appellee to continue to use the Appellant's name anywhere in Texas will only continue the confusion. Having prevailed on its trade name infringement claim, Appellant was entitled to deny the Appellee the use of its trade name throughout the state. Even Appellee's alleged expert, Mr. Trevino admitted that a business is entitled to do operate and solicit business state-wide and that he in fact has his own business name and can do business state-wide **[RR:XI:26-30].**  Both Appellant's request and Appellee's admissions of state-wide rights find support in Texas law.

**(ii)  Presumption of State-Wide Rights:**

A certificate of registration issued by the Secretary of State under the provisions of the Texas Trademark Act is admissible in evidence as prima facie proof of: 1) the validity of the registration; 2) the registrant's ownership of the mark; and 3) the registrant's exclusive right to use the mark through-out the state of Texas in connection with the goods or

39

services specified in the certificate, subject to any conditions or limitations stated therein. Tex. Bus. & Comm. Code § 16.15(c) (1968). The Act specifically provides that no registration of a trademark shall adversely affect common law rights acquired in a trademark prior to its registration. While a mark remains effectively registered, no common law right may be acquired against the owner unless he abandons such mark. Tex. Bus. & Comm. Code s 16.27(a) (1968). *Cano v. Macarena*, 606 S.W.2d 718, 722 (Tex. Civ. App. 1980). It is undisputed that Mr. Sullivan had properly registered the mark and that it was in place continuously since 1975 [**RR:IV:43; RR: XII: Exhibits 24-25**].

The registration of Tesoro Corporation created certain protections as to its exclusive right to use that name. The jury verdict in this case has confirmed the principle established in *Cano v. Macarena*, 606 S.W.2d 718, 722 that Appellee acquired no rights in the name Tesoro Corporation and in fact has violated the Appellant's rights. To give the Appellant less than exclusive state-wide use is to reward Appellee's

efforts by providing Appellant less than what the plain reading of the law provides. In addition, the problem is more complex because even if Appellee was restricted to some small corner of one county in Texas, the fact that it continues to be allowed to list "Tesoro Corporation" as its assumed name lies at the center of the confusion. Appellant receives calls from out-of-state state regulator's, taxing authorities, creditors, consumers, and other persons **[RR:IV:127-192; RR:VIII:70-103]**, based on what is on file with the Texas Secretary of State. Therefore, not only should Appellee not be allowed to use the name in Texas, but its assumed name registration should be withdrawn or the harm to the Appellant continues unabated.

**(iii)    Actual Use and Business Transactions:**

In addition to the nature of the harm occasioned by the Appellee's continued use of Tesoro Corporation, evidence presented in this case demonstrates the state-wide presence of the Appellant, including a significant and long-established presence in Bexar County that continues today that even Appellee's expert had to

acknowledge **[RR:XI:17-24].** Appellant is in every region of the state including Bexar, Dallas, Harris, Tarrant and El Paso counties. In addition to Texas' major cities, the counties virtually encircle every large metropolitan area in the state. In West Texas where Plaintiff presence is not as pronounced, he nevertheless does business in every county with any significant population center that would seek out and utilize sign-based advertising. In addition, in those areas of the state, the metropolitan areas are also the places where business in the outlying counties would be acquired. For example, the county seat of Tom Green County is San Angelo and San Angelo is the closest city where business is conducted for at least a 10-12 county surrounding area.[4]

It is also important to note that the counties where the Appellant actively does business are also the areas where the Appellee and its business is very likely to operate and create the same type of confusion

---

[4] By way of illustration Plaintiff in west Texas where Plaintiff is not in every county it does business in Potter County (Amarillo), Lubbock County (Lubbock), Taylor County (Abilene), Midland County (Midland), Ector County (Odessa), El Paso County, (El Paso), and Val Verde County (Del Rio).

that has been testified to in this case. Tom Green, Ector, Midland and the contiguous and near-by counties are now at the very center of a re-vitalized Texas oil and gas industry. Allowing the Appellee to use the Appellant's trade name anywhere in these areas invites the same confusion and harm that gave rise to the lawsuit.

**(iv) All Speech Mediums:**

The evidence adduced at trial and at the permanent injunction hearing shows that beginning in 2009 when Appellee began using Tesoro Corporation as its assumed name, the confusion became disseminated through a variety of mediums, all of which contribute to the underlying problem and must be stopped. At issue here is the ability of a Court to regulate speech and its natural corollary, the printed word. However it is not any speech, but commercial speech that the Plaintiff seeks to enjoin.

Commercial speech in any form occupies one of the lowest rungs on the First Amendment hierarchy, enjoying only a "limited measure of protection, commensurate

43

with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." *Bd. of Trustees v. Fox,* 492 U.S. 469, 477, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (quoting *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 456, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978)). Commercial speech does "no more than propose a commercial transaction" and may be freely regulated. *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 385, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973).

In *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,* 447 U.S. 557, 566, 100 S. Ct. 2343, 65 L.Ed.2d 341 (1980), the Supreme Court outlined its method of analyzing the lawfulness of restrictions on commercial speech:

> In commercial speech cases, then, a four-part analysis has developed. At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine whether the

> regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest. Misleading commercial speech, is not protected by the First Amendment. *Thompson v. W. States Med. Ctr.,* 535 U.S. 357, 367, 122 S. Ct. 1497, 152 L.Ed.2d 563 (2002).

As the *Central Hudson* Court noted, "there can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. *The government may ban forms of* [235 S.W.3d 670] *communication more likely to deceive the public than to inform it...."* *Central Hudson,* 447 U.S. at 563, 100 S. Ct. 2343 (emphasis added). Thus, "the government may freely regulate commercial speech that ... is misleading," *Florida Bar v. Went For It,* 515 U.S. 618, 623-24, 115 S. Ct. 2371, 132 L.Ed.2d 541 (1995) (citations omitted), and the remaining *Central Hudson* factors apply only if the speech is not misleading.

In this case it has already been established that the speech Appellant seeks to enjoin is the improper and impermissible use of Appellant's own trade name.

45

The use by Appellee of that trade name has been found by a jury to mislead and confuse the public and has caused harm to the Appellant. The assertion that a Texas court cannot enjoin the Appellee from using the Appellant's trade name is without legal or factual foundation.

**(v) Publicly Traded Stock Designation:**

Appellee trades its publicly issued and held stock on the New York Stock Exchange and its symbol, "TSO," is identified as "Tesoro Corporation and was founded in 1939 and is headquartered in San Antonio, Texas. While the Appellee has the right to use the name as a "Delaware Corporation" it use as being headquartered in "San Antonio, Texas coupled with its assumed name filing contributes to the confusion. Appellant requested that as part of the permanent injunction that Appellee be prohibited from referencing "Tesoro Corporation" as a San Antonio, Texas Company.

**(vi) Use of Appellant's Trade Name on the Internet:**

The Appellant is well aware of the maxim that "equity will not do a vain thing." The idea that this

Court or any regulatory body can take back or remove four years of material that the Appellee has improperly placed on the internet is absurd. However, A court can prospectively prevent the Appellee, its agents, employees, and personnel from using Appellant's trade name in the future. The starting point for this relief is the Appellee's web-site. The web-site is easily accessed by simply typing in the Appellant's trade name, "Tesoro Corporation." In addition the web-site can be accessed by typing in "Tesoro Corp." Appellee has so completely co-opted the Appellant's trade name that when Tesoro Corporation is entered on the web, Plaintiff's business never appears. In order to reach Tesoro Corporation one must enter "Tesoro Corporation, Donna, Texas" **[RR: VIII: 80-92].** Appellee's misapplication and misappropriation of Appellant's trade name has not only served as an improper use of the name, but has allowed Defendant to virtually co-opt the Appellant's name.

An examination of the Appellee's web-site not only reveals that it purports to be Tesoro Corporation of

47

Texas, but Appellee also uses the site to disseminate other material such as press releases, news conferences, copies of its annual reports and social responsibility reports to name just some of what is published on the site, all of which use Appellant's trade name and perpetuate the confusion and harm that already exists [**RR: XII: Defendant's Exhibit 7; RR: XIV, Exhibit 3**].   In *Rescuecom Corp. v. Google, Inc.* 562 F.3d 123 (2d Cir. 2009), the Court found that even persons and entities several steps removed from the actual infringer could be compelled to stop using a trade name.   In *Rescuecom Corp. v. Google, Inc.* the federal court found that Google was infringing on a mark through "keyword use" and that such a practice qualified as "use" in commerce under the Lanham Act. The keyword in this instance is "Tesoro Corporation," and as set out herein above and testified to in this hearing, Defendant has completely co-opted that term on the internet.   Plaintiff does not even appear when it inputs its own trade name.

**2. In Light of the Appellant's Evidence and the Virtual Absence of Appellee's Evidence to the Contrary the Court Denied Appellant's Injunctive Relief without Any Basis in Guiding Principles or Rules:**

An abuse of discretion exists where a Court lacks evidence in the record which reasonably supports that trial court's decision. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978); *Recon Exploration, Inc. v. Hodges*, 798 S.W.2d 848, 852 (Tex. App.--Dallas 1990, no writ). The test for abuse of discretion is whether the court acted without reference to any guiding rules and it is a question of whether the court acted without reference to any guiding rules and principles. *Craddock v. Sunshine Bus Lines*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.Comm.App.--1939, opinion adopted). Another way of stating the test is whether the act was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex.1984); *Landry v. Travelers Insurance Co.*, 458 S.W.2d 649, 651 (Tex.1970). As set out herein above, all of the evidenced adduced at trial supports the following:

-The Appellee knowingly usurped Appellant's trade name;

-The Appellee's usurpation of the Appellant's trade name caused clear, actual confusion which creates an almost irrebuttable presumption of likelihood of consumer confusion;

-The Appellee made no effort to rebut the presumption;

-The Appellant presented abundant evidence of actual harm for which no adequate remedy at law existed

-The only evidence of any quantification of damage, ie of an adequate remedy at law, was the very limited testimony of Gene Trevino that he admits covered only his assertion of the cost of answering phones. He admits to not looking at any other element of harm or damage.

On what basis and upon what evidence did the Court deny injunctive relief? The Court's order is completely silent on any basis for the judgment, including whether the Court actually reached the issue of injunctive relief at all. That factor alone should be fatal to the Court's denial of Appellant's Request for Permanent Injunction.

**The District Court erred in denying Appellant's Injunctive Relief based on Failure to Balance the Equities and/or Unclean Hands.**

In addition to the factors required for trademark and/or name infringement and the four elements of a permanent injunction in Texas, the Texas courts have articulated several sub-factors that must be considered. Because the Trial Court's judgment in this case is virtually silent as to the underlying basis of the decision, the Appellant must address these factors as well because they were raised by Appellee during the course of the trial.

## A. Balancing the Equities:

There is a line of cases that suggests that a trial court must balance the equities before issuing an injunction and consider injury to (1) the defendant and the public were the injunction granted and (2) the complainant were the injunction denied. See *Storey v. Cent. Hide & Rendering Co*., 148 Tex. 509 226 S.W.2d 615, 618-19 (1950). An injunction will ordinarily be

denied if the "injury to the complainant is slight in comparison to the injury caused the defendant and the public." Id. at 619. Conversely, an injunction may issue if the injury to the defendant and the public is slight when compared to injury suffered by the complainant. See id. "Public convenience or necessity, economic burden to the defendant, and the adequacy of a legal remedy may affect this balance." *McAfee MX v. Foster*, No. 02-07-080-CV, 2008 WL 344575, at *2, 2008 Tex.App. LEXIS 968, at *8 (Tex.App.-Fort Worth Feb. 7, 2008, pet. denied), petition for cert. filed, No. 08-639 (U.S. Nov. 12, 2008).

However, the case cited most frequently in Texas is *Storey v. Central Hide & Rendering Co.,* 148 Tex. 509, 226 S.W.2d 615 and that case is a nuisance case. Strictly speaking the doctrine of balancing the equities does not even apply to a non-nuisance setting. If this Trial Court applied the doctrine Appellant would point out that the public suffers no injury whatsoever by forcing Appellee to cease using the Appellant's trade name. Based on the nature of the

confusion demonstrated in this case, by clearly delineating itself as Tesoro Petroleum, the confusion caused to the public or the government seeking to reach Appellee would virtually cease. The two "Tesoros" would again be distinct as they were prior to 2004. The evidence adduced at trial makes it clear that the steady confusion Appellant suffers from did not begin until after Tesoro Petroleum began using the Appellant's trade name.

The larger problem with this Trial Court having applied an equity balancing test to deny the Appellant's injunctive relief is that the Appellee presented no concrete evidence of harm that would have been occasioned by a name change. In other words, it gave the Court nothing to "balance." Aside from some conjecture from Appellee's witness, Kelly Curll, at the end of the Permanent Injunction hearing suggesting that changing the name back to Tesoro Petroleum would result in the demise of Tesoro Petroleum as a San Antonio based company and with it the jobs, tax base and possibly other unforeseen consequences **[RR: IX: 62–75],**

53

Appellee offered no equity to balance. It presented no evidence of any real harm or cost to change the name. Even Ms. Curll had no idea when asked what would really happen if the Appellee had to change its name. When asked if she could articulate the harm to Appellee, she simply said "no." **[RR: IX: 68].** The one witness that could have provided insight into the question, Elizabeth Ising, offered nothing. Ms. Ising was a Washington D.C. based attorney who handles matters of corporate governance and Security Exchange Commission issues for her clients. Since 2007 she has performed those functions for Appellee **[RR: IX: 6-8].** Over the course of her direct testimony Ms. Ising testified as to the requirements of a name change and what would have to be done in order for Appellee to relinquish the use of Appellant's trade name in Texas. She indicated three areas where Appellee would be affected, but offered no testimony as to cost of such a name change **[RR: IX: 9-31].** On cross-examination Ms. Ising was asked directly, what would she charge to change Appellee's name and she testified she "had no idea" and

54

could not quantify any financial harm to Appellee that would be occasioned by a name change **[RR: IX: 40, 42].**

Any harm to the Appellee should have been totally discounted because the uncontroverted evidence adduced at trial indicates that Appellee knew the name it wanted to use had been taken and that after being refused the right to use the name, Appellee chose to move ahead anyway with full knowledge that it might be successfully sued for common law trademark/name infringement. Both Mr. Parrish and Ms. Ryan testified Appellee made the change because it suited it's business interest to do so. Ms. Ryan even testified that the issue of Plaintiff's ownership of "Tesoro Corporation" was actually raised and that no one at Appellee was concerned even though the very real possibility existed that the Appellee could be sued for trade name infringement. Therefore, any harm to the Appellee is self-induced and the product of extreme corporate arrogance.

## B. Overly Broad:

Because this case will involved denying Appellee access or use over a geographic area, Appellant anticipated the Appellee raising the notion that the injunction on a state-wide basis was "overly broad." Appellee put on testimony and cross-examined Paul Sullivan on the issue as to where Appellant did business. However, Appellee's attack on where Appellant did business was misplaced in the context of an injunction because "overly broad" does not refer to the geographical reach of an injunction, but rather to something completely unrelated.

An injunction should be broad enough to prevent a repetition of the evil sought to be corrected. *Hitt v. Mabry*, 687 S.W.2d 791, 795 (Tex. App.–San Antonio 1985, no writ) (citing *Lower Nueces River Water Supply Dist. v. Live Oak County*, 312 S.W.2d 696, 701 (Tex.Civ.App.–San Antonio 1958, writ ref'd n.r.e.)) An injunction must not be so broad, however, as to enjoin a defendant from activities that are a lawful and proper exercise of his rights. Id. Where a party's acts are divisible,

56

and some acts are permissible and some are not, an injunction should not issue to restrain actions that are legal or about which there is no asserted complaint. *Hellenic Inv. v. Kroger Co.*, 766 S.W.2d 861, 866 (Tex. App.-Houston [1st Dist.] 1989, no writ). Thus, the entry of an injunction that enjoins lawful as well as unlawful acts may constitute an abuse of discretion. *Webb v. Glenbrook Owners Association, Inc.*, 98 S.W.3d 374, 384 (Tex. App.—Dallas, 2009).

In this case "legality" did not pose an issue to the entry of an injunction. Appellant's right to the name "Tesoro Corporation" has been sustained by a jury verdict and that right extends to the state-wide use of the name. There is no valid argument that Appellee cannot legally use the name Tesoro Corporation in Hidalgo County, but may do so in Bexar County. An injunction that prohibits the use of the Plaintiff's trade name on a state-wide basis is completely consistent with Plaintiff's rights as conveyed by Texas statute and as evidenced by his registration with the Texas Secretary of State.

It is also important to note that this case does not involve the enforcement of a non-compete clause. There is significant case law in Texas that limits the geographical reach of a non-compete to a "reasonable" geographic area and time span. *Light v. Centel Cellular Co,* 883 S.W.2d 642 (Tex. 1994). *Isunai v. Manske-Sheffield Radiology Group,* 805 S.W. 2d 602 (Tex. App—Beaumont, 1991); *Gonzalez v. Zamora,* 791 S.W.2d 258 (Tex. App.--Corpus Christi, 1990). That is not what is at issue in this case. Appellant is not seeking to prevent the Appellee from competing in the market place in any county in Texas. Confusion among consumers is the issue here and it has been established. Therefore, in arriving at appropriate injunctive relief the Court was not bound by the non-compete parameters established in the employment field, but was free to award relief consistent with the Appellant's statutory right that a jury had already determined was being infringed upon by the Defendant.

## C. Unclean Hands:

To the extent the Trial Court's ruling reflects a finding that Appellant lacked "unclean hands" that ruling is completely in error. The Appellee argued that Appellant's corporate representative, Paul Sullivan, used inappropriate language in deposition and put on evidence to that effect.  It is a timeless doctrine that one who seeks equity must do equity and must come to court with clean hands. See *Dunnagan v. Watson*, 204 S.W.3d 30, 41 (Tex. App.—Fort Worth 2006, pet. denied); *Flores v. Flores,* 116 S.W.3d 870, 876 (Tex. App.—Corpus Christi 2003, no pet.). Whether equitable relief should be denied based on unclean hands is left to the discretion of the trial court. *Dunnagan,* 204 S.W.3d at 41; Flores, 116 S.W.3d at 876. The only real prohibition against applying the doctrine is the requirement that it be confined to misconduct in regard to, or at all events connected with, the matter in litigation, so that it has in some measure affected the equitable relations subsisting between the two parties, and arising out of the transaction. *Lazy M*

59

*Ranch, Ltd. v. TXI Operations, LP,* 978 S.W.2d 678, 683 (Tex. App.-Austin 1998, pet. denied).

Based on a two-page brief that could not even tie Appellant's alleged conduct to any case authority, or show how Appellant's conduct in this case prejudice it **CR: 294-296],** Appellee requested the Court to deny Appellant's injunctive relief based upon testimony elicited form Mr. Sullivan as to alleged perjury that his company had always been in good standing when in fact it had lapsed once and he had to pay a $50 fee to reinstate. In addition they alleged Mr. Sullivan had violated an agreement to produce some documents during the course of the litigation **[RR:VIII:180-198].** Appellee also played excerpts from Mr. Sullivan's three depositions where he used in appropriate language. However, the Appellee could not show any harm to it, serious or otherwise, and the Court correctly stated that the doctrine applies to events leading up to the litigation **[RR:VIII:198].** In addition, the lone case cited by Appellee, *Union Gas Corp. V. Gisler,* 129 S.W. 3d 245 (Tex. App.-Corpus Christi, 2003), does not even

apply. In that case the interpleader had actually caused the dispute giving rise to the need to interplead the funds and the Court denied any equitable relief to the interpleader. More importantly the Court stated:

> For a complainant to be entitled to relief in equity, it is necessary that he bring himself within the full meaning of the maxims that he who seeks equity must do equity, and that he who comes into equity must come with cleans hands. These maxims comprehend not only the previous conduct of the complainant toward the defendant, but also the attitude of the complainant toward the defendant throughout the litigation. The complainant must in good conscience offer to do equity and to have the court accord to the defendant all of his rights. *Union Gas Corp. V. Gisler,* 129 S.W. 3d 245, 153.

The Court in this case never sanctioned the Appellant for any conduct, nor did the Appellee ever file any pleading requesting any such relief. As sited to above, not only were all of the Appellee's rights afforded it, but Appellee offered no evidence of any kind as to how any of its rights were harmed or affected, seriously or otherwise.

What makes this argument patently absurd is that the Appellee's conduct leading up to the litigation,

the arena where "unclean hands" traditionally and most often applies, was wrought with fraud and a blatant disregard of he Appellant's rights. The Appellee's own conduct brought about the dispute, and it sought to limit its damage by having the court reward it for its conduct, conduct even the Court questioned as being fraudulent **[RR:XI:61].**

## Issue #5

**Did the District Court err in vacating the Jury's Attorney Fee award.**

The Court's denial of Appellant's attorney's fees ignores two salient facts. First, the Appellant prevailed in the jury trial. Second, the parties stipulated to the amount of attorney's fees in this case to be afforded the prevailing party. That stipulation is memorialized in a Rule 11 Agreement on the record in this case [**RR: V:128–129].**

The Plaintiff was awarded a jury verdict **[RR: VI: 75].** The jury had answered yes to both questions, that "Tesoro Corporation" was the Appellant's trade name and that Appellee's conduct had created a likelihood of

consumer confusion.  Coupled with the Court's directed verdict on the issue of senior user **[RR:V:151]** the result of the jury trial was a complete victory for he Appellant. Under the terms of the Rule 11 Agreement **[RR:V: 128-129]** Appellant's attorney's fees should have been sustained.

## CONCLUSION

The Appellant requests that this Court reverse the Trial Court's judgment and render a verdict.  The Court should grant the Appellant a permanent injunction consistent with the Trial Court's directed verdict on the issue of senior user prior to the start of the trial, the unanimous jury verdict finding the remaining two elements required for common law trade infringement, and the evidence presented showing both irreparable harm and inadequate remedy at law.  The Defendant's Motion to Set Aside Jury Verdict was without merit.  The jury instruction and charge did not require a question as to irreparable harm because the Appellant's claim for common law trade name infringement necessarily related to its request for

declaratory relief that was based on that sole claim. There was no confusion created by the jury charge nor did that charge omit any essential element of the Appellant's trade name infringement claim.

The requested scope of injunction was both appropriate and within the scope of what the Trial Court could provide. It placed the Appellant and Appellee in the exact position they were in prior to 2004 when the Appellee knowingly and intentionally usurped the Appellant's trade name. To the extent that the doctrine of balancing the equities has any applicability to this case the Appellee put on no evidence of any substance that demonstrated any monetary harm to it as the result of having to change its name back to Tesoro Petroleum. To the extent the equities must be weighed, they all come down in favor of the Appellant. The Appellee's alleged hardship in having to change its name is the direct result of its own actions, taken with full knowledge that Appellant owned the name Tesoro Corporation and that if it tried to use that name in Texas it could be successfully sued

for common law trade name infringement. That same arrogance brought Appellee, not Appellant, into Court with unclean hands. Appellee's two-page brief and alleged evidence of discovery impropriety did not deprive Appellee of one single vested right nor did it occasion any harm. Throughout the four-year life of the case Appellee never once moved for any relief in the form of sanctions or otherwise against Appellant for any reason. Finally, having prevailed upon both a directed verdict and a jury verdict, the Appellant's entitlement to $100,000 in attorney's fees should be restored.

## PRAYER

Appellant prays that this Court reverse the Trial Court's ruling and render a judgment in favor of Appellant for the declaratory relief as set out herein above and in the Trial Record and restore its attorney's fees award.

Respectfully Submitted,

/S/ Mark A. Weitz_____
Reynaldo Ortiz
SB#15324275
**Ortiz & Millin LP**
1305 E. Nolana, Suite F
McAllen, Texas 78504
956-687-4567
965-631-1384 facsimile
Mark A. Weitz
SB# 21116500
**Weitz Morgan PLLC**
100 Congress Avenue
Suite 2000
Austin, Texas 78701
512-394-8950
512-852-4446 (facsimile)
ATTORNEYS FOR APPELLANT
TESORO CORPORATION

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 30th day of January, 2015, I caused to be served a true and correct copy of the foregoing Appellant's Brief on Defendant Tesoro Corporation d/b/a Tesoro Petroleum Corporation by serving its attorney of Record, Frank Weahtered by electronic service and/or facsimile transmission and/or by United States First Class Mail, Return Receipt Requested.

/S/ Mark A. Weitz_____
Mark A. Weitz

## APPELLANT'S CERTIFICATE OF BRIEF

I, Mark A. Weitz, certify that Appellant's Brief filed in this case is in 14 point font, and the footnote text is in 12 point font.

I further certify that this brief was prepared with Microsoft Word 2011 for Mac, and that, according to that program's word-count function, the sections covered by TRAP 9.4(i)(1) that the number of words in this brief including footnotes (excluding any caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix) is 11,285.

Respectfully Submitted,

/S/ Mark A. Weitz_____
Mark A. Weitz

# APPENDIX 1

CAUSE NO. C-2971-09-D

| TESORO CORPORATION | § | IN THE DISTRICT COURT OF |
| | § | |
| V. | § | HIDALGO COUNTY, TEXAS |
| | § | |
| TESORO CORPORATION | § | |
| d/b/a TESORO PETROLEUM CORP. | § | 206th JUDICIAL DISTRICT |

## FINAL JUDGMENT

Be it remembered that on the 25th day of March, 2013, the above entitled and numbered cause came on for trial. The parties appeared in person and through their respective counsel of record and announced ready. That morning, the Plaintiff nonsuited without prejudice its claim for damages. A jury of twelve men and women then having been duly chosen, the case proceeded to trial. During trial, the Court granted Plaintiff a partial directed verdict on the issue of whether Plaintiff is the senior user of the name Tesoro Corporation. Also during trial, the parties stipulated to the amount of their respective attorney's fees, but not to either side's entitlement to recover fees. At the close of the evidence, the Court then overruled Defendant's motion for directed verdict and sent the case to the jury. After deliberating, the jury returned its verdict into Court, finding that Tesoro Corporation is the trade name of the Plaintiff and that there exists a likelihood of consumer confusion between Plaintiff's corporation and Defendant's corporation. Defendant then filed its First Amended Motion for Judgment and to Disregard, which was heard by the Court on the 21st day of May, 2013, following which the Court took the matter under advisement.

1

Appendix 1

Be it further remembered that on the 18th day of June, 2013, said cause came on for a second phase of trial before the bench on the issues of (1) irreparable harm (over Defendant's objection and subject to Defendant's First Amended Motion for Judgment and to Disregard); (2) whether the Plaintiff has an adequate remedy at law; and (3) the expediency, necessity, and propriety of equitable relief in the form of a permanent injunction. The parties appeared in person and through their respective attorneys and announced ready and the case proceeded to trial before the bench. Following two days of testimony, the case was recessed until the 14th day of August, 2013, at which time trial was resumed. The parties then rested and closed on August 15, 2013. Both parties then moved for judgment and objected to each other's proposed judgments, and the Court took the matter under advisement.

After considering the pleadings, the Court's partial directed verdict for the Plaintiff, the verdict of the jury, Defendant's First Amended Motion for Judgment and to Disregard, the evidence, the parties respective motions for judgment at the conclusion of the case, and the arguments of counsel, the Court finds for the Defendant.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff Tesoro Corporation take nothing of or from Defendant Tesoro Corporation d/b/a Tesoro Petroleum Corp, and that Plaintiff go hence without day.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that ~~Defendant~~ ~~Tesoro Corporation d/b/a Tesoro Petroleum Corp. do have and recover of and from~~ ~~Plaintiff Tesoro Corporation the amount of $100,000.00 in stipulated attorney's fees, for~~ each party shall bear their own attorneys' fees.

2

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXd.
~~which execution will issue if not timely paid.~~

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that costs of court be, and the same are hereby taxed against Plaintiff Tesoro Corporation, for which execution will issue if not timely paid.

This Judgment disposes of all claims and parties and is a final and appealable Judgment.

7/2/2014

Signed this ___ ~~day of August, 201~~3.

_____
JUDGE PRESIDING

CC:

Hon. Reynaldo Ortiz, Esq -EMAIL rey@leydeortiz.com; gh@leydeortiz.com

Hon. Gerald Drought, ESq.-EMAIL gdrought@mdtlaw.com

Hon. Sarah Cowen, Esq. E-MAIL sarah@cowengarza.com

3



# APPENDIX 2

Verdict Received
March 28, 2013
at 1:25

CAUSE NO. C-2971-09-D

| TESORO CORPORATION | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| vs. | § | 206TH JUDICIAL DISTRICT |
| | § | |
| TESORO CORPORATION | § | |
| D/B/A TESORO PETROLEUM | § | |
| CORPORATION, | § | |
| Defendant. | § | HIDALGO COUNTY, TEXAS |

## CHARGE OF THE COURT

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may not take your notes back into the jury room , nor consult them during deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will return your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1.     Do not let bias, prejudice, or sympathy play any part in your decision.

2.     Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.     You are to make up your own minds about the facts. You are the sole judges of

1

Appendix 2

the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4.      If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.      All the questions and answers are important. No one should say that any question or answer is not important.

6.      Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7.      Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8.      Unless otherwise instructed, the answers to the questions must be based on the decision of at least ten of the twelve jurors.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

2

## DEFINITIONS/ INSTRUCTIONS

The term "Plaintiff" shall mean Tesoro Corporation of Donna, Texas

The term "Defendant" shall mean Tesoro Corporation, d/b/a Tesoro Petroleum Corporation.

The term "preponderance of the evidence" means a greater weight and degree of credible testimony or evidence introduced before you and admitted in this case.

3

**QUESTION 1:**

Do you find from a preponderance of the evidence that Tesoro Corporation is the trade name of the Plaintiff?

A "trade name" is any designation which is adopted and used by a person to denominate goods which he markets or services which he renders or a business which he conducts , or has come to be so used by others.

Answer YES or NO:  _YES_

4

5

If you answered "Yes" to Question No. 1, answer Question No. 2. Otherwise, do not answer Question No. 2.

**QUESTION 2:**

Do you find from a preponderance of the evidence that there exists a likelihood of confusion between the Plaintiff's corporation and the Defendant's corporation by any consumer?

Answer YES or NO: _YES_

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

    a.     have the complete charge read aloud if it will be helpful to your deliberations;

    b.     preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

    c.     give written questions or comments to the bailiff who will give them to the judge;

    d.     write down the answers you agree on;

    e.     get the signatures for the verdict certificate; and

    f.     notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate:**

1. You may answer the questions on a vote of ten jurors.

2. If ten jurors agree on every answer, those ten jurors sign the verdict.

If eleven jurors agree on every answer, those eleven jurors sign the verdict.

If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

<u>PRESIDING JUDGE</u>

6

## Certificate of the Jury

Check one:

_✓_ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_____     _Edward Troy Smith_
SIGNATURE OF PRESIDING JUROR   PRINTED NAME OF PRESIDING JUROR

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

JUROR'S SIGNATURE                    JUROR'S PRINTED NAMES

_____              _____

_____              _____

_____              _____

_____              _____

_____              _____

_____              _____

_____              _____

_____              _____

_____              _____

_____              _____

7

# APPENDIX 3

MR. DROUGHT: No, Your Honor.

THE COURT: Okay. In reference to the motion for directed verdict, the -- I got a bit sidetracked between what the -- the Plaintiff's Motion For Directed Verdict was insofar as the Court's Charge. Tell me again which issues you're asking for a directed verdict on?

MR. ORTIZ: We were asking for a directed verdict on -- on the issue of -- to grant the senior -- that senior -- that Mr. -- that Tesoro Corporation is the senior user of that name in Texas. Tesoro Corporation. Plaintiff is the senior user of Tesoro Corporation in Texas.

THE COURT: Okay.

MR. DROUGHT: Your Honor, I think the *Zapata* case sinks the ship for the Plaintiff. I'm sorry, but I don't know any other clearer way to say it. *Zapata* is *Zapata,* Tesoro is Tesoro.

THE COURT: Tesoro's not a geographic name. *Zapata*, that's what they relied on, the geographic perspective. And that's distinguishable from the *Thompson* case that use surnames. And when you start looking at the detailed information about what the protected name is in a trademark case, there's major distinction between surnames, geographic, generic names.

Appendix 3

I've read quite a few cases before this afternoon, counsel, and I'm not getting any new information than what I was led to believe and I wanted to give an opportunity to be enlightened. I always welcome enlightenment, but, with all due respect, I'll agree to disagree with you, Mr. Drought, on the *Zapata* case because of the -- the language used within it.

In reference to that Motion For Directed Verdict, the court is going to grant Plaintiff's directed verdict that the Plaintiff is the senior user of the name Tesoro Corporation.

MR. DROUGHT: And our -- our objection is noted obviously?

THE COURT: Absolutely.

Was there any other directed verdict?

MR. ORTIZ: No, Your Honor.

THE COURT: Okay. While we were off the record and in reviewing the proposed charges again, it came to my head that it would be wise to suggest to both sides to modify your stipulation breaking it down even further as to the different levels; trial, Court of Appeals and Supreme Court. Did anyone want to heed that advice? And if you don't, that's fine.

MR. ORTIZ: We did, Your Honor. We conferred many times but we were unable to reach an